CLERK'S OFFICE U.S. DIST. COURT
AT LYNCHBURG, VA
FILED

SEP 2 1 2010


BY:
JULIA C. DUDLEY, CLERK
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
LYNCHBURG DIVISION

| | |
|---|---|
| BUILDERS MUTUAL INSURANCE COMPANY, <br><br> *Plaintiff,* <br><br> v. <br><br> HALF COURT PRESS, L.L.C., ET AL., <br><br> *Defendants.* | CIVIL ACTION No. 6:09-CV-00046 <br><br><br> MEMORANDUM OPINION <br><br><br> NORMAN K. MOON <br> UNITED STATES DISTRICT JUDGE |

Plaintiff insurance company seeks a declaratory judgment[1] that it does not owe Defendant property developers a duty to provide insurance coverage or a defense against allegations brought against one of the Defendants in an underlying civil suit in Amherst County, which alleges that the Defendant's actions damaged a private pond. Plaintiff moved for summary judgment on the ground that coverage was excluded by a "Total Pollution Exclusion" included in the policy; by memorandum opinion and order entered on August 3, 2010, I denied Plaintiff's motion. The matter was tried before the court on August 26, 2010. As set forth herein, I find that Plaintiff is entitled to the requested declaratory judgment.

## I.

"A federal court hearing a diversity claim must apply the choice-of-law rules of the state in which it sits." *Resource Bankshares Corp. v. St. Paul Mercury Ins. Co.*, 407 F.3d 631, 635

---

[1] A district court has jurisdiction, pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201(a), to determine the scope of insurance coverage concerning an ongoing dispute in state court. *See Penn-America Ins. Co. v. Coffey*, 368 F.3d 409, 412 (4th Cir. 2004). Though exercise of this authority is discretionary, a declaratory judgment is appropriate when it would "serve a useful purpose in clarifying and settling the legal relations in issue, and . . . terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." *Aetna Cas. & Sur. Co. v. Quarles*, 92 F.2d 321, 325 (4th Cir. 1937).

(4th Cir. 2005). Here, it is undisputed that Virginia law governs.

"Under Virginia law, an insurer's obligation to defend an action 'depends on comparison of the policy language with the underlying complaint to determine whether any claims alleged [in the complaint] are covered by the policy.'" *America Online, Inc. v. St. Paul Mercury Ins. Co.*, 347 F.3d 89, 93 (4th Cir. 2003) (quoting *Superformance Int'l, Inc. v. Hartford Cas. Ins. Co.*, 332 F.3d 215, 220 (4th Cir. 2003)) (alteration in the original). This is referred to as the "eight corners rule." *Erie Ins. Exch. v. State Farm Mut. Auto. Ins. Co.*, 2002 WL 32075410, at *5 (Va. Cir. Ct. December 16, 2002). The eight corners rule requires a court to "compare the four corners of the insurance policy against the four corners of the underlying complaint to determine if any allegations may potentially be covered by the policy." *CACI Intern., Inc. v. St. Paul Fire and Marine Ins. Co.*, 566 F.3d 150, 154 (4th Cir. 2009) (quotation omitted). In other words, I must determine whether the underlying "complaint against the insured alleges facts and circumstances, some of which, if proved, would fall within the risk covered by the policy." *Penn-America Ins. Co. v. Coffey*, 368 F.3d 409, 413 (quotation omitted).

The insured has the burden to prove coverage, *Resource Bankshares Corp. v. St. Paul Mercury Ins. Co.*, 407 F.3d 631, 636 (4th Cir. 2005), while "the insurer bears the burden of proving that an exclusion applies," *Bohreer v.. Erie Ins. Group*, 475 F. Supp.2d 578, 585 (E.D. Va.2007).[2]

---

[2] "The duty to defend is broader than the duty to indemnify because it 'arises whenever the complaint alleges facts and circumstances, some of which, if proved, would fall within the risk covered by the policy.'" *Resource Bankshares Corp. v. St. Paul Mercury Ins. Co.*, 407 F.3d 631, 636 (4th Cir. 2005) (quoting *Brenner v. Lawyers Title Ins. Corp.*, 240 Va. 185, 189 (1990)); *see also School Board of Newport News v. Commonwealth*, 279 Va. 460, 472 (2010). "[I]f it is doubtful whether the case alleged is covered by the policy, the refusal of the insurer to defend is at its own risk." *Brenner*, 240 Va. at 189 (citing *London Guar. Co. v. White & Bros., Inc.*, 188 Va. 195, 199-200 (1948)); *see also School Board of Newport News*, 279 Va. at 472-73. "And, if it be shown subsequently upon development of the facts that the claim is covered by the policy, the insurer necessarily is liable

(continued...)

## II.

I make the following findings of fact, incorporating most of the parties' stipulations.

Builders Mutual Insurance Company ("Builders Mutual"), Plaintiff in the instant action, is a mutual insurance company incorporated, and with its principal place of business, in North Carolina. Defendants in this action are Half Court Press, L.L.C. ("Half Court") and Riverview Property Development Group, L.L.C. ("Riverview"). Half Court is an active Virginia limited liability company ("L.L.C."), formed on March 31, 2008, with its principal place of business in Bedford County, Virginia. Riverview is an active Virginia limited liability company ("L.L.C."), formed on March 24, 2007, with its principal place of business in Bedford County, Virginia. Beginning on March 31, 2008, and at all times pertinent hereto, Riverview was one of Half Court's members or owners. And, at all times pertinent hereto, Half Court press owned and was in the process of developing a tract of property located in Amherst County, Virginia into a residential subdivision known as "Abee Manor."

Half Court is also the defendant in an underlying action in the Circuit Court for Amherst County, *Robert L. Sales v. Half Court Press, LLC* (the "Sales complaint," the "underlying complaint," or the "Amherst County case"). The Sales complaint accuses Half Court, in the course of developing "Abee Manor," of damaging Mr. Sales' property, which is downslope from "Abee Manor" and includes a lake or pond. The Sales complaint alleges that Half Court's negligent failure "to create and maintain sufficient detention basins and erosion and sediment control measures" during development of the Abee Manor project in turn caused Mr. Sales'

---

[2](...continued)
for breach of its covenant to defend." *Id.* (citing *London Guar. Co.*); *see also School Board of Newport News*, 279 Va. at 472-73. With its answer, Defendant filed a counter-claim for breach of contract, which I will dismiss.

property to be damaged by "the continued presence of such water, dirt, spoil, rock, sand, silt, debris and/or other such sediment." The Sales complaint seeks, *inter alia*, Half Court's remediation of this damage and to enjoin Half Court from further development of the tract unless and until Half Court "creates and maintains sufficient detention basins and erosion and sediment control measures to prevent the unauthorized discharge of sediment" into Mr. Sales' lake.

Builders Mutual issued a commercial general liability policy (the "policy") to Riverview for the policy period March 13, 2008, through March 13, 2009. That policy was later renewed for the term March 13, 2009, through March 13, 2010 (the "renewal policy"). On March 11, 2009, at Riverview's request, Riverview's insurance agent issued a "Commercial Policy Change Request" to add Half Court as an additional insured on the policy, pursuant to which Half Court was thereafter added to the renewal policy. However, Half Court was not an insured under the original policy for 2008-2009.[3]

On May 18, 2009, the Sales complaint was filed in the Circuit Court for Amherst County.

Plaintiff asserts that the damage alleged in the Sales complaint occurred, if it occurred, during the 2008-09 policy period, and that both Defendants knew of Mr. Sales' allegations of property damage in connection with Abee Manor prior to the March 11, 2009, request to add Half Court as an insured to the 2009-2010 renewal policy.

On June 15, 2009, Builders Mutual notified Riverview by letter that a review of the Sales complaint and the policy indicated that Half Court might not be covered, and that Builders

---

[3] With their answer, Defendants filed a counter-complaint, asserting that the denial of coverage and the denial of a defense to Half Court for the claims made in the Sales complaint constitutes a breach of contract. In their counter-complaint, Defendants implicitly acknowledge that Half Court is not covered under the original policy for 2008-2009: "Half Court and Riverview believe and therefore allege that the policy at issue and its renewal clearly include Half Court as an 'insured', [*sic*, punct.] *at least for the term beginning no later than March 13, 2009.*" (Emphasis added.) Additionally, Half Court stated, in a response to Plaintiff's interrogatories, that "Half Court Press LLC does not claim coverage under 2008-2009 Policy."

Mutual, with a full reservation of rights, would provide a defense until Builders Mutual could determine whether the policy covered Half Court.

On August 5, 2009, Builders Mutual wrote to Riverview, denying coverage to Half Court under the policy, based on a determination that Half Court was not an insured under the policy and that, assuming *arguendo* that Half Court was covered under the policy, the claims asserted in the Sales complaint were excluded from coverage under the policy's Total Pollution Exclusion. In the instant action, Plaintiff filed a motion for summary judgment on that latter ground. By memorandum opinion and order entered on August 3, 2010, I denied Plaintiff's motion, finding that, although coverage for the actions in the underlying complaint regarding sediment pollution was arguably excluded by the Total Pollution Exclusion, the allegations in the underlying complaint were not restricted to pollution damage.

### III.

Rule 52(a)(1) of the Federal Rules of Civil Procedure requires that, "[i]n an action tried on the facts without a jury," I "must find the facts specially and state [my] conclusions of law separately." "The findings and conclusions may be stated on the record after the close of the evidence or may appear in an opinion or a memorandum of decision filed by the court." *Id.*

### A. Findings of Fact

In addition to facts previously stated, I find the following.

### 1.

The property damage alleged in the Sales complaint occurred, if at all, during the March 13, 2008, to March 13, 2009, policy period, when Half Court was not listed as a named insured on the policy. For instance, the Sales complaint, which was filed on May 18, 2009, specifically alleges that, "Beginning in the summer of 2008, defendant and/or persons acting on its behalf

denuded, timbered and/or logged the defendant's property. . . ." The Sales complaint further alleges that "prior to" this action, Half Court "knew or should have known" certain facts amounting to alleged negligence in failing to protect Sales' property.

Riverview and Half Court knew, prior to their March 11, 2009, request to add Half Court to the policy as an "additional insured" to the 2009-2010 renewal of the policy, that Robert L. Sales had made complaints alleging that Half Court's actions and inaction regarding the development of Abee Manor were causing damage to Mr. Sales's property due to erosion and sedimentation; that Mr. Sales had threatened to, or stated that he would file a lawsuit as a result thereof; and that in response to his complaints, various county and state officials had investigated and found actual sedimentation and water discoloration in Mr. Sales's pond. However, neither Riverview nor Half Court provided timely notice to Builders Mutual about the complaints or the property damage.

For instance, Half Court and Riverview, through their mutual executive Robert W. Powers and their agent and subcontractor, Mr. Ty Mosby of Berkley Howell & Associates, P.C., knew at least by January 12, 2009, the date of a meeting taking place on Sales's property, that Mr. Sales was complaining of property damage to his pond, which he alleged was caused by Half Court's negligence in the development of Abee Manor subdivision, and that Mr. Sales was prepared to file a lawsuit as a result of the alleged damage. These parties also knew that, at various times on and prior to January 12, 2009, water discoloration had been observed in Sales's pond.

On or before July 7, 2008, and again as revised on October 7, 2008, Half Court's agent and subcontractor, Berkley Howell & Associates, P.C., prepared a "Stormwater Erosion and Sediment Control Narrative and Stormwater Pollution Prevention Plan" pertaining to Abee

Manor and the potential of the development of that property to cause damage to neighboring properties. This plan, which discusses the existence of "critical erosion areas" and is expressly intended to confront "erosion and sediment control" issues during the course of the project, outlines the measures that the developers planned to undertake to control such problems. As such, Half Court had actual knowledge of the risk or potential of the project to cause damage to adjacent properties as early as July 7, 2008.

Despite Defendants' actual knowledge of these risks, and despite actual knowledge of specific complaints of such damage having occurred, threats of a lawsuit as a result of that alleged damage, and knowledge of the existence of water discoloration at Sales's pond on or even well before January 12, 2009, Builders Mutual first received notice of the claim and suit after the underlying lawsuit was already filed by Mr. Sales against Half Court, pursuant to a "General Liability Notice of Occurrence/Claim" form dated May 22, 2009, submitted to Builders Mutual by Riverview. This first notice was received by Builder's Mutual well after Riverview had requested to add Half Court to the 2009-2010 policy.

Thus, when Riverview requested on March 11, 2009, to add Half Court as an additional insured to the 2009-2010 policy, it already knew about Sales's complaints of property damage, his threats to sue as a result, and about instances of water discoloration caused by runoff from the Abee Manor project, but did not notify Builders Mutual about those allegations and threats until well after Builders Mutual added Half Court to the policy.

*2.*

"Section I – COVERAGES," Coverage A 1(a) of the Commercial General Liability Coverage Form of the policy (the "CGL Form"), provides, in relevant part, for payment of "those sums that the insured becomes legally obligated to pay as damages because of 'bodily

injury' or 'property damage' to which this insurance applies."

"Section I – COVERAGES," Coverage A 1(b)(2) of the CGL Form of the policy provides, in relevant part, that "[t]his insurance applies to 'bodily injury' and 'property damage' only if . . . the 'bodily injury' or 'property damage' occurs **during the policy period."** (Emphasis added.)

"Section I – COVERAGES," Coverage A 1(b) of the CGL Form of the policy further provides that

[t]his insurance applies to 'bodily injury' and 'property damage' only if:

\* \* \*

(3) **Prior to the policy period, no insured** . . . and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the . . . "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the . . . "property damage" occurred, then any continuation, change or resumption of such . . . "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

(Emphasis added.)

"Section II - WHO IS AN INSURED" of the CGL Form of the policy provides in relevant part:

1. If you are designated in the Declarations as:

\* \* \*

c. A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.

"Section II - WHO IS AN INSURED" of the CGL Form of the policy further provides, in relevant part:

-8-

3.    Any organization you newly acquire or form, other than a partnership, joint venture, or limited liability company . . . will qualify as a Named Insured if there is not other similar insurance available to that organization. However,

   a.    Coverage under this provision is afforded only **until the 90th day after you acquire or form the organization** or the end of the policy period, whichever is earlier; [and]

   b.    Coverage A does not apply to "bodily injury" or "property damage" that occurred before you acquired or formed the organization. . . .

(Emphasis added.)

Riverview and Half Court do not allege that any of these insurance policy provisions are "ambiguous."

### B. Conclusions of Law

Under Virginia law, "'[i]t is the function of the court to construe the contract made by the parties, not to make a contract for them. The question for the court is what did the parties agree to, as evidenced by their contract.'" *Graphic Arts Mut. Ins. Co. v. C.W. Warthen Co.*, 240 Va. 457, 460 (1990), quoting *Magann Corp. v. Electrical Works*, 203 Va. 259, 264 (1962). "The guiding light in the construction of a contract is the intention of the parties as expressed by them in the words they have used, and courts are bound to say that the parties intended what the written instrument plainly declares." *Id.* "When a disputed policy term is unambiguous," Virginia law requires that a court "apply its plain meaning as written." *Virginia Farm Bureau Mut. Ins. Co. v. Williams*, 278 Va. 75, 81 (2009).

### 1.

I find that the insurance policy provisions recited above are "unambiguous," and that the parties to the policy are subject to the plain meaning of the terms and conditions stated therein.

## 2.

Under the plain meaning of the policy, no insurance coverage under the 2008-2009 policy was provided to, nor is available to, Half Court by operation of "Section I – COVERAGES," Coverage A 1(b)(2) of the CGL Form of the policy, which provides, in relevant part, that "[t]his insurance applies to 'bodily injury' and 'property damage' only if . . . the 'bodily injury' or 'property damage' occurs during the policy period." Half Court was not a named "insured" under the policy at any time within that policy period – indeed, Half Court has admitted that it does not seek coverage under the 2008-2009 policy period – thus, Half Court could not be insured for damage that occurred during that policy period.

Nor was Half Court named as an "additional insured" under that policy period. Half Court was added as an "additional insured" to the 2009-2010 policy upon its renewal on March 13, 2009. However, the property damage alleged in the Sales Complaint had already occurred prior to the 2009-2010 policy period. The property damage alleged in paragraphs 14-19 of the Sales complaint is alleged to have occurred in or "prior to" the summer of 2008. Additionally, Mr. Sales had already complained about such damage and was already threatening a lawsuit for such damage on or before January 12, 2009. Thus, even though Half Court was an additional insured on the 2009-2010 policy, Half Court is not entitled to coverage under that policy because the alleged damage occurred before that policy period began on March 13, 2009.

## 3.

No insurance coverage is available to Half Court pursuant to "Section I – COVERAGES," Coverage A 1(b) of the CGL Form of the policy, which provides, in relevant part:

[t]his insurance applies to 'bodily injury' and 'property damage' only if:

(3)     Prior to the policy period, no insured . . . and no 'employee'
        authorized by you to give or receive notice of an 'occurrence' or
        claim, knew that the . . . 'property damage' had occurred, in whole
        or in part.  If such a listed insured or authorized 'employee' knew,
        prior to the policy period, that the . . . 'property damage' occurred,
        then any continuation, change or resumption of such . . . 'property
        damage' during or after the policy period will be deemed to have
        been known prior to the policy period.

I find that Robert W. Powers, an executive with both Half Court and Riverview, and Ty

Mosby, Half Court's agent and subcontractor, knew as early as 2008, and at least on or before

January 12, 2009, that Mr. Sales was alleging property damage due to erosion and sedimentation

as a result of Half Court's development of Abee Manor, and that Mr. Sales had stated threats to

file a lawsuit as a result of those allegations of erosion and sedimentation damage, and that

various county and state employees had observed instances of sedimentation and water

discoloration.  This knowledge predated the March 13, 2009, inception date of the 2009-2010

policy period, and as such, no coverage is available to Half Court under that policy.

## IV.

Half Court's counterclaim, asserting breach of contract or duty for not defending, is

moot, given that I have determined that no duty to defend Half Court exists under the policy.  In

the absence of a duty to defend under the policy, Half Court's counterclaim predicated on the

breach of that duty must be dismissed, along with the "lack of good faith claim," given that a

determination that no coverage is owed under the policy necessarily nullifies the "lack of good

faith" claim based on the alleged unreasonable denial of coverage.

## V.

For the preceding reasons, I find that Plaintiff is entitled to the requested declaratory

judgment, and declare that Plaintiff has no duties to Half Court under the commercial general liability policy Plaintiff issued to Riverview for the policy period March 13, 2008, through March 13, 2009.

An appropriate order will accompany this memorandum opinion.

Entered this 21ˢᵗ day of September, 2010.

NORMAN K. MOON
UNITED STATES DISTRICT JUDGE